UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALLISON P.,                                      )
                                                 )
             Plaintiff                           )
                                                 )
v.                                               )        No. 2:18-cv-00061-JHR
                                                 )
NANCY A. BERRYHILL,                              )
*Acting Commissioner of Social Security,*        )
                                                 )
             Defendant                           )

## MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable, as of her date last insured for SSD benefits, of performing past relevant work or, in the alternative, other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that (i) the ALJ assessed a physical residual functional capacity ("RFC") that was not supported by substantial evidence, (ii) the ALJ assessed a mental RFC that was not supported by substantial evidence, and, (iii) because of the faulty RFC, the testimony of the vocational expert ("VE") was flawed and cannot stand as substantial evidence for the ALJ's conclusion of non-disability. *See*

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 19.

Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 5-16. I find no reversible error and, accordingly, affirm the commissioner's decision.

This court vacated a prior ALJ decision in this case and remanded the matter for further proceedings. *See* Record at 883. Post-remand, an ALJ held a new hearing on June 14, 2016, at which the plaintiff and a VE testified. *See id.* at 908. The ALJ issued a new decision on August 29, 2016. *See id*. at 897.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2012, Finding 1, Record at 885; that, through her date last insured ("DLI"), she had the severe impairments of affective disorder, temporomandibular joint dysfunction, degenerative disc disease of the cervical spine, myofascial pain in the neck and shoulders, and asthma, Finding 3, *id*.; that, through her DLI, she had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she was limited to occasional overhead reaching due to neck and upper extremity dysfunction and occasional exposure to extremes of temperature, humidity, wetness, and concentrated environmental pollutants such as dust, chemicals, and fumes, that she should have minimal changes in work settings and routines and avoid tasks involving a variety of instructions or tasks, and that she was able to understand and carry out simple one- or two-step instructions and understand and carry out "detailed but uninvolved" written or oral instructions involving a few concrete variables in or from standardized situations, but could make judgments only on simple work-related decisions, Finding 5, *id.* at 887; that, through her DLI, she was capable of performing past relevant work as a Census enumerator, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 894; that, in the alternative,

considering her age (50 years old, defined as an individual closely approaching advanced age, on her DLI, June 30, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 895; and that she, therefore, had not been disabled from January 1, 2011, her alleged onset date of disability, through June 30, 2012, her DLI, Finding 7, *id*. at 896. The Appeals Council declined to assume jurisdiction of the case following remand, *id*. at 873-76, making the decision the final determination of the commissioner, 20 C.F.R. § 404.984(a), (b)(2); *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work

other than her past relevant work. 20 C.F.R. § 404.1520(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Physical RFC

The plaintiff argues that the ALJ's limitation to light work is unsupported by substantial evidence because, as a practical matter, she rejected all of the expert opinions of record: those of agency nonexamining consultants Benjamin Weinberg, M.D., and Anthony Pileggi, M.D., that she had no severe physical impairment, and those of treating sources Peggy R. Cyr, M.D., and Ellen Lee, M.D., that she had a sedentary RFC. *See* Statement of Errors at 5-7. She argues that, therefore, "there is no connection between the ALJ's assessed functional limitations and any particular evidence of record" and that the RFC was "impermissibly based on [the ALJ's] lay assessment of medical evidence." *Id*. at 5. She cites, *inter alia*, *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), *Staples v. Colvin* ("*Donald Staples II*"), No. 2:15-cv-392-DBH, 2016 WL 4146083 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016), and *Staples v. Astrue* ("*Donald Staples I*"), Civil No. 09-440-P-S, 2010 WL 2680527 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010), in support of that proposition. *See id.* at 7.

The commissioner distinguishes the *Staples* cases on the basis that, in this case, the ALJ made a permissible commonsense judgment, gave the plaintiff the benefit of the doubt, and clarified how she derived the specific components of her RFC assessment. *See* Defendant's

4

Opposition to Plaintiff's Statement of Specific Errors ("Opposition") (ECF No. 15) at 8-9. The commissioner has the better argument.

The First Circuit has held that, "since bare medical findings are unintelligible to a lay person in terms of [RFC], the ALJ is not qualified to assess [RFC] based on a bare medical record." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). "This principle does not mean, however, that the [commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as [she] does not overstep the bounds of a lay person's competence and render a medical judgment." *Id. See also, e.g.*, *Manso-Pizarro*, 76 F.3d at 17 (an ALJ may assess an RFC without relying on a medical opinion when "the medical evidence shows relatively little physical impairment").

In all three *Staples* cases, this court found remand warranted when ALJs rejected all available expert opinions of record and then seemingly construed the raw medical evidence to assess RFC, exceeding the bounds of their competence as laypersons. *See Lisa Staples*, 2017 WL 1011426, at *4-5; *Donald Staples II*, 2016 WL 4146083, at *5; *Donald Staples I*, 2010 WL 2680527, at *3. In all three cases, the court noted that the ALJs had failed to explain how they derived the components of their RFC determinations. *See Lisa Staples* 2017 WL 1011426, at *8 (observing that, "[i]n the absence of any explanation by the [ALJ] as to how, in deviating from the [agency nonexamining consultants'] opinions, she derived components of her physical RFC, that RFC determination cannot be found to be supported by substantial evidence"); *Donald Staples II*, 2016 WL 4146083, at *5 (noting that, "when a claimant raises the issue, the connection between a functional limitation included in an RFC and some particular evidence in the record must be apparent" and that "[t]he absence of such a connection demonstrates that the [ALJ] drew a conclusion that either was without support in the evidence or was beyond his capacity as a lay

5

person to draw"); *Donald Staples I*, 2010 WL 2680527, at *3-4 (observing that the commissioner's argument that the ALJ had "permissibly assessed the plaintiff's mental RFC as of 1992 by crediting, at least in part, his subjective allegations" and other evidence "might have proved persuasive had the [ALJ] clarified how she derived the specific components of her RFC from these sources").

Here, the ALJ explained how she arrived at the plaintiff's physical RFC.

First, she stated that she gave little weight to the Cyr and Lee physical RFC opinions – the only opinion evidence that the plaintiff was more physically limited than she found. *See* Record at 892-93. The plaintiff does not separately challenge that assignment of weight. *See* Statement of Errors at 5-9.

Second, she explained that, while she found that the plaintiff had severe physical impairments, the record contained little evidence of functional limitations stemming from those impairments during the relevant period. *See* Record at 889-90 (noting that plaintiff "required little treatment" for her neck, jaw, and upper extremity pain prior to her DLI, the record contained multiple normal or mild objective findings prior to her DLI, and there was record evidence that her TMJ, shoulder, and neck symptoms, including pain, intensified after her DLI). She noted that her RFC determination was supported by the plaintiff's "condition, physically and mentally at the time of her [DLI], the limited extent of her treatment, especially before her [DLI], [and] her activities of daily living[.]" *Id*. at 894.

Third, unlike in *Lisa Staples*, in which the ALJ discounted the opinions of agency nonexamining consultants on the basis that evidence unseen by both was "more consistent with a light exertional lifting and carrying capacity and limits in the [plaintiff's] ability to utilize foot controls or perform various postural movements[,]" *Lisa Staples*, 2017 WL 1011426, at *6

(citation and internal quotation marks omitted), the ALJ in this case discounted the opinion of Dr. Pileggi in part because it was inconsistent with the plaintiff's "subjective complaints[,]" Record at 894.

Fourth, and finally, although the plaintiff contends that there is "no basis in the record" for the ALJ's determination that a "'reduction to work at the light exertional level sufficiently accommodates the [plaintiff]'s cervical, shoulder and TMJ pain[,]'" Statement of Errors at 9 (quoting Record at 893), the ALJ explicitly "limited the [plaintiff] to lifting/carrying/pushing and pulling only twenty pounds occasionally and ten pounds frequently with additional limits to overhead reaching *to accommodate her complaints* of cervical and left shoulder pain[,]" *id.* at 889 (emphasis added).[2] She went on to explain that she added environmental limitations to account for the plaintiff's subjective complaints of asthma symptoms. *See id*. at 890 ("There appears to be controversy over the diagnosis but I have added environmental restrictions to her [RFC] assessment *to account for her symptoms* that might be related to a diagnosis of asthma.") (emphasis added).

At bottom, therefore, the ALJ did not interpret raw medical evidence to arrive at the plaintiff's physical RFC. Rather, she explained that, although the record revealed little by way of physical limitations, she partly credited the plaintiff's subjective allegations. "It is not error to assess restrictions more favorable to a claimant than those set forth by medical experts on the basis

---

[2] That limitation is consistent with "light work" as defined in 20 C.F.R. § 404.1567(b):
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

of the adoption of a claimant's own testimony." *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *8 (D. Me. Sept. 22, 2017) (rec. dec., *aff'd* Mar. 28, 2018) (quoting *Starrett v. Colvin*, No. 2:14-cv-152-JHR, 2015 WL 3966127, at *4 (D. Me. June 29, 2015)).

## II.  Mental RFC

The plaintiff next argues that the ALJ's assessment of her mental RFC is flawed on two bases. First, she asserts that, although the ALJ purported to give great weight to the opinion of agency nonexamining consultant David R. Houston, Ph.D., who deemed her markedly limited in the "ability to carry out detailed instructions[,]" the ALJ inexplicably found her capable of carrying out "detailed but uninvolved instructions." Statement of Errors at 10-12 (internal quotation marks omitted). Second, she contends that the ALJ erred in assigning little weight to the opinions of her longtime treating counselor, Laurie Weber-Taft, LCSW. *See id.* at 12-14.

### A.  Concentration, Persistence, or Pace

The ALJ found that, "[w]ith regard to concentration, persistence or pace, the [plaintiff] ha[d] moderate difficulties." Record at 886. She noted that, although the plaintiff had "difficulty following complex instructions" and reported "difficulty concentrating[,]" she took an evening class for Microsoft Office in September 2014 despite her "complaints of inattention[.]" *Id.* at 886-87. Ultimately, the ALJ found that the plaintiff retained the RFC to "understand [and] carry out simple one- or two-step instructions[,]" "understand [and] carry out 'detailed but uninvolved' written or oral  instructions involving a few concrete variables in or from standardized situations[,]" and "make judgments only on simple, work-related decisions." Finding 5, *id.* at 887.

The plaintiff argues that the ALJ's limitations "to work involving simple one- or two-step instructions and to making only simple, work-related decisions . . . do not adequately account for [her] moderate limitations in concentration, persistence or pace." Statement of Errors at 9.

As a threshold matter, while the plaintiff focuses on Dr. Houston's sub-finding of marked limitation in carrying out detailed instructions, *see id.* at 10-12, an agency nonexamining consultant's RFC assessment is contained in the narrative portion summarizing his sub-findings, *see, e.g., Swift v. Astrue*, Civil No. 08-280-B-W, 2009 WL 902067, at *3 (D. Me. Mar. 31, 2009) (rec. dec., *aff'd* Apr. 21, 2009). While Dr. Houston made a sub-finding that the plaintiff was "[m]arkedly limited" in her "ability to carry out detailed instructions[,]" in the narrative portion of his report, representing his RFC assessment, he deemed her "able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek." Record at 76.

In turn, an ability to carry out detailed but uninvolved instructions is not inconsistent with "simple" work. Despite the plaintiff's characterization of the ALJ's decision as a "deviation from the medical opinion[,]" Statement of Errors at 11, the ALJ merely incorporated language from the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT"). While, as the plaintiff emphasizes, *see* Statement of Errors at 10-12, the ALJ did not explain how her findings, as worded, comported with those of Dr. Houston, it is reasonably apparent that they did.

The DOT defines six levels of General Educational Development ("GED") reasoning, representing the educational level "required of the worker for satisfactory job performance" in the area of reasoning. Appendix C, § III to DOT. Each level is progressively more demanding, running the gamut from level 1, which requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job[,]" to level 6, which requires a worker, *inter alia*, to "[a]pply principles of logical or scientific thinking to a wide range of intellectual and practical problems" and "[d]eal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases." *Id.* A GED reasoning level of

2 presupposes the ability to "[a]pply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id*. (emphasis added). The language of the ALJ's RFC determination aligns with that of GED reasoning levels 1 and 2. *Compare* Finding 5, Record at 887 *with* Appendix C, § III to DOT. In turn, this court has held that GED reasoning levels 1 and 2 comport with simple work. *See, e.g.*, *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *1 (D. Me. July 11, 2012) (rec. dec., *aff'd* July 31, 2012).

The ALJ's mental RFC determination, therefore, was neither inconsistent with her Step 2 determination that the plaintiff had "difficulty following complex instructions[,]" Record at 886-87, as the plaintiff contends, *see* Statement of Errors at 11, nor inconsistent with Dr. Houston's opinion that she was limited to "simple tasks[,]" Record at 76. The plaintiff does not separately challenge the ALJ's reliance on Dr. Houston's opinion. *See* Statement of Errors at 9-12.

Nonetheless, at oral argument, in response to the commissioner's reliance on the ALJ's adoption of GED reasoning level 2 language, *see* Opposition at 16, the plaintiff's counsel challenged the supportability of the mental RFC determination on two additional bases.[3]

First, she contended that the ALJ muddied the waters at hearing by posing hypothetical questions to the VE that conflated GED reasoning levels with Specific Vocational Preparation ("SVP") levels.[4] Indeed, the ALJ clarified to the VE that she intended to limit her hypothetical

---

[3] These points arguably should have been raised in the statement of errors, in which case I would treat them as having been waived. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future*, issues or claims* not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted) (emphasis added). However, because the newly-raised points reasonably can be viewed as fitting within the confines of a reply to the commissioner's opposing brief, I have considered their merits.

[4] The DOT defines SVP "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appendix C, § II to DOT. An SVP of 2 is "[a]nything beyond short demonstration up to and including 1 month[.]" *Id*.

question to jobs with an SVP level of 2. *See* Record at 949-50. In response to the ALJ's hypothetical question as clarified, the VE identified two GED reasoning level 3 jobs: Census enumerator, DOT § 205.367-054, on which the ALJ relied at Step 4, and mail clerk, DOT § 209.687-026, one of three jobs on which the ALJ relied at Step 5. *See* Record at 894-96, 948-50; DOT §§ 205.367-054, 209.687-026.[5] Following the VE's testimony, the plaintiff's counsel questioned the inclusion of GED reasoning level 3 jobs, whereupon the ALJ explained that SVP level 2 jobs encompass GED reasoning levels 1 through 3. *See* Record at 954.

At oral argument, the plaintiff's counsel asserted that, because the ALJ did not include language corresponding to a GED reasoning level of 3 in her RFC determination, her reliance on both of the GED level 3 jobs was misplaced. However, as counsel for the commissioner rejoined, the error is harmless, the ALJ having relied at Step 5 on two other jobs that are consistent with her RFC determination, those of counter attendant, DOT § 311.477-014, and fast foods worker, DOT § 311.472-010, both of which are rated as having a GED reasoning level of 2. *See* Record at 895-96, 950; DOT §§ 311.472-010, 311.477-014. The plaintiff does not contend that those jobs do not exist in significant numbers in the national economy. *See* Statement of Errors at 9-12.

Second, the plaintiff's counsel challenged the mental RFC determination on the additional basis that it is impossible to know what the ALJ intended to include in her RFC finding. She argued that, because the ALJ included language from both GED reasoning levels 1 and 2 in her RFC determination and then signaled after the VE's testimony that she also meant to include GED reasoning level 3, one cannot discern whether she meant to find the plaintiff limited to GED reasoning level 1, GED reasoning level 2, or GED reasoning level 3, a fundamental failure of

---

[5] A GED reasoning level of 3 is defined as entailing the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Appendix C, § III to DOT.

articulation that warrants remand. She argued that it was illogical for the ALJ to include language from GED reasoning level 1 if she meant to limit the plaintiff to GED reasoning level 2, given that RFC is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). She noted that, if the ALJ meant to limit the plaintiff to jobs with a GED reasoning level of 1, all of the jobs on which she relied at Steps 4 and 5 are eliminated.

Yet, despite the ALJ's inclusion of GED reasoning level 1 language ("carry out simple one- or two-step instructions[,]" Appendix C, § III to DOT), it is reasonably apparent from her colloquies during the hearing with both the VE and the plaintiff's counsel that she meant to limit the plaintiff to jobs with a GED reasoning level of *at least* 2, corresponding with "simple" work. *See* Record at 949-50, 953-55. While her inclusion of language from GED reasoning level 1 in her RFC determination is superfluous, it is not illogical. It merely makes explicit what is implicit in the progressive structure of the GED reasoning levels: that a person capable of performing work at GED reasoning level 2 would also be capable of performing work at the lower level of GED reasoning level 1.

### B. Treatment of LCSW Opinion

The plaintiff next argues that the ALJ erred in giving little weight to the opinion of her treating counselor, LCSW Weber-Taft. *See* Statement of Errors at 12-14. However, as the plaintiff concedes, *see id*. at 13, a social worker is not a so-called "acceptable medical source[,]" 20 C.F.R. § 404.1502(a). The ruling applicable to the handling of opinions of such "other sources" does not require that an ALJ afford any particular weight to their statements:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally

12

should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018) ("SSR 06-03p"), at 331.

The ALJ's discussion plainly satisfied that standard. She considered LCSW Weber-Taft's opinions and explained that she discounted them because (i) LCSW Weber-Taft was not an acceptable medical source, (ii) her opinions were inconsistent with her own treatment notes, "which consistently indicate[d] normal mental status[,]" and (iii) her opinions were "based largely on the [plaintiff']s subjective complaints, which [were] not consistent with her educational status or her ability to care for her house and children and her sick brother." Record at 891. She added that the plaintiff had "never required psychiatric hospitalization or intensive outpatient treatment" and had been "maintained on sporadic, weekly therapy, medication and short term case management services." *Id*. at 891-92.

The plaintiff contends that this assignment of little weight is unsupported by substantial evidence; however, in so arguing, she merely relies on reference to other evidence of record that she asserts supports LCSW Weber-Taft's opinions. *See* Statement of Errors at 13-14. That does not suffice to undermine the ALJ's rationale.

### III. VE Testimony

Lastly, the plaintiff argues that the VE testimony cannot stand as substantial evidence because it is based on a faulty RFC. *See* Statement of Errors at 14-16. Because, for the reasons

discussed above, the plaintiff's challenges to the ALJ's physical and mental RFC findings fall short, this derivative argument likewise fails.[6]

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 24th day of March, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The plaintiff further argues, in passing, that, post-remand, the ALJ erred in reexamining the prior ALJ's Step 4 finding that she was not capable of performing past relevant work, a reexamination that was not within the purview of the remand order. *See* Statement of Errors at 15 n.4. As the commissioner notes, *see* Opposition at 19 n.12, any error is harmless given the ALJ's alternative Step 5 finding that the plaintiff was capable of performing other work existing in substantial numbers in the national economy.